Good morning, this is a matter of U.S. v. Cespedes. Did I say that correctly? I think so. Cespedes? Is that it? Cespedes. That's the way I'm going to, I'll go with it. Good morning, Your Honors. Good morning. May it please the Court, my name is Kristi Unger. I represent Duane Cespedes, the appellant in this matter. The issue before Your Honors this morning is whether Mr. Cespedes aided and abetted the high-speed car chase that endangered others. Well, is that the issue? Is the issue foreseeability versus aiding and abetting? The issue is aiding and abetting. Section 1B.1.1 is very clear that, I'm sorry, 1B.1.3 is very clear. It says, unless otherwise specified. Note 5 in 3C.1.2 specifies otherwise. And it articulates the standard, a defendant is accountable for his own conduct and that which he aided and abetted, counseled, commanded, induced, procured, or willfully caused. For brevity, I've used the phrase aided. So it says he must be responsible for, i.e., aid, abet, counsel, command. So are you saying the only way he can be responsible for is if he fits under one of those verbs? Correct. Aid, abet, counsel, command, induce, procure, or cause? That's correct. He has, well, the driver is waiting outside. Yes. After the robbery. So Sospedes and his cohort go in, and they go out, and they jump in the car, and they go at least three miles before they jump out. We're not quite sure why they jump out, but they wanted out. Well, for those three miles, isn't that really akin to aiding and abetting? Aiding and abetting requires a specific intent and some act toward facilitating that conduct. What we don't have here on the record. Can you infer the intent, and that was the act of jumping in the car? What you can infer is that he had the intent to flee, absolutely. And I would suggest that there's a line, a difference between the intent to flee and flight and causing a high-speed chase that recklessly endangers others. I point to the fact that 3C1.1 specifically excludes an obstruction enhancement based on flight or attempting to flee. 3C1.2 adds the reckless endangerment element. There's a line that it crosses. Certainly, he intended to leave the scene of the robbery. So in the end, what we're talking about here is he got, what, 144 months, is that it? Yes. And 84 was mandatory? That's correct. So it would be, you're saying he should have gotten, without the two points of enhancement, 31 to 51 as opposed to 51 or whatever. He got 60. So you're, in effect, at most, or at the least, you're talking about 9 months, that's correct? I have written here, and I certainly could be wrong, that it would, the robbery guideline would reduce from 51 to 63 to 41 to 51. So it's about 10 months. 41 to 51, I mean. Correct. Right. So it would be, okay, at best or at worst, best, worst, whatever, 9 months. Yes, approximately. Now, are you saying if this went back, the judge could not sentence for obstruction of justice? I am. As I mentioned just a minute ago, 3C1.1 is quite clear that fleeing from the scene of a crime is not an enhancement. How about his throwing away the gun? Likewise. 3C1.1 also excludes that, unless it creates a material hindrance for law enforcement, which there's no allegation of in this case. I recognize. The court could give the same sentence. I mean, this is clearly, to use the vernacular, a bad dude. The court could give the same sentence and just. He'd have to go 10 months less, unless he varied up. We could do it. You'd just have to dance around the guidelines. Under 3553A, the statement about the gun and everything else the woman said, there's enough there to, once you set what the appropriate guideline range is, you can still give an appropriate sentence. The judge might assume that this amount is still appropriate and get there a different route. Yes, that's absolutely correct, and the judge can exercise his discretion. The problem here is certainly that we don't have, the three-step process was not followed correctly and that the guidelines were not calculated correctly. Was, I forget, was this brought to the court's attention? It was, Your Honor. Because the court seemed to just say, conspiracy, you're in it. Exactly. Too bad. Yes. There was an objection to the pre-sentence report, and also Ms. Fizer below brought it to the court's attention. It's sentencing, and it appears the government and the court both based, well, I'm sorry, the government based its argument and the court based its decision on participation in the robbery. In furtherance of. And foreseeability. Absolutely. Chase was in furtherance, and he's a conspirator. I understand he wasn't driving, but he's complicit in that. He's as responsible because he is a co-conspirator. Is that? Exactly, which is the incorrect standard, as we just discussed. Note five sets out the aiding and abetting. Should we send it back for argument as to whether aiding, abetting, whether any of these apply, or whether there was conduct that wasn't otherwise brought forth, or is it your view the government had a bite at the apple and that's all they get? That would certainly be my view, in that they should not have an opportunity to supplement the record. The record's quite bare, as we know. We know the car left at a high rate of speed is essentially what we know, as far as Mr. Suspides is concerned, and that he later got out of the car. What you're arguing is that you would just send it back for resentencing. Without the. Very far, too. Absolutely. But, I mean, my position is that the record is just insufficient, as a matter of law, to apply the enhancement, though. Okay. No further questions. Thank you. Thank you. Good morning, Your Honors. May it please the Court. I am Bernadette McKeown, and I represent the government in this matter. The government's position is that the district court did not clearly err in applying the enhancement. What the court clearly did was take the elements of conspiracy and the Israeli being pled to or convicted of, and then it used that as a sentencing criteria. Well, Your Honor, I think what the court did, and it was overlooked by all parties below, although the defense did object to the application of the enhancement, there was no discussion of application note 5 or the applicability of section 1B1.3's co-conspirator liability. And I think the parties all proceeded under the assumption that foreseeability was a test. There was no argument that foreseeability was not. Well, they may have proceeded under the assumption that they couldn't possibly hold him responsible for recklessly endangering when he wasn't the driver. Well, Your Honor, I respectfully disagree. I think, first of all, our position is 1B1.3 does apply to section 3C1.2 enhancements, but even if it doesn't in this case, let's just assume it doesn't, the record here is more than sufficient to find that this particular defendant aided and abetted the high-speed chase that ensued after the case. And in that sense, we look at his conduct both before, during, and after the high-speed chase. How did he do that? Without driving the car, how did he do that? Well, Your Honor, the cases are clear that the court should look at the entire course of conduct and the circumstances.  The Young case and the Conley case, both the Ninth Circuit and the Tenth Circuit, and the other few courts. Is Conley the one with the paper out the window? No, no, that's the Willifong case. We're not relying on that case. But Conley is very similar to this case. But what the courts there observed is you have to look at the – rarely are you going to have a situation where you have direct evidence that when he got into the car, he said, now drive away at a high rate of speed. We're not going to have that evidence. You have to look at the circumstances and the inferences. That doesn't help because it may well be that Congress thought that unless the person is actually the driver, it shouldn't apply. I'm missing something here. I thought that every court of appeals that's looked at 3C1.2, the Fourth, the Ninth, the Tenth, and the Eleventh, has said that the aiding and abetting is the only thing that applies. The co-conspirator standard does not apply. They have reached that conclusion, and we respectfully disagree with their conclusion. And if you would like me to explain why. That provision, the Application Note 5, is identical to the language in Section 1B1.3B1A. For aiding and abetting. The first part. It was added to – that application note was added in an amendment that was passed in 1992. It was also added at the same time to Section 3C1.1, obstruction. The only statement about this in the commission's guidance is that it was intended to clarify the conduct that this reached. And our position is they did not say we are – you are not permitted to apply co-conspirator liability under 1B1.3B. If they intended to take that drastic step, which is to say, in this situation, co-conspirators, even though they're liable for everything their co-conspirators do under the reasonable foreseeability test, not in this situation. They didn't do that. Application Note 5 is silent, and you're saying, therefore, it's not a preclusion for a sentencing judge to take that into account? That's correct, Your Honor. And also, Application Note 5, our position is clarify also includes emphasize. There may have been a need to – Why doesn't it go away? If you're right, why doesn't Application Note 5 become a nullity? Well, it doesn't – in the sense that it doesn't add anything, it – but I think it's there. Now, finish your sentence. In the sense that it doesn't add anything, it is a nullity. That's what you're saying? I would say that it's not a nullity. It's there for emphasis. It's to remind – there are situations, particularly under 3C1.1, obstruction, where it's not – you're not in a co-conspirator situation. You have a third person. You call your relative. You call your friend. You tell them to make the phone calls, threatening the witness. I think they're trying to emphasize that and remind the courts that they can also apply this application, this enhancement, where it's not a co-conspirator. You're right. I'm a bank employee, and I give somebody the combination to the bowl. I'm sitting at home on a Sunday afternoon punishing myself by watching the Cleveland Browns lose to whomever they're playing. So you saw the bank robbery. That's every Sunday. Every Sunday. Well, the bank robbery goes down. I assume the bank is open on Sunday. After the robber goes in, works the ball, gets some money out, gets in the car, high-speed chase ensues, and the person – then I am subject to an enhancement for recklessly endangering it. It never left my house, but I'm liable for that high-speed chase. That's what you're arguing. Only if that was reasonably foreseeable. No, but your argument is it's always foreseeable. You're arguing that. No, it's not, because the mere fact that a robbery occurs and then people are going to have to leave that robbery doesn't mean that there's going to be reckless conduct. I loaded my car. Why do we bother even putting Application Note 5 in there? Your Honor, I don't have a clear-cut answer to that. I was suggesting that they added that in 1992 to both sections as a point of emphasis and clarity rather than a restriction. When the guidelines – when they want to restrict something, like in the double-counting situation, they say so. How do they say it? Maybe they say it by something like, except as otherwise provided. But let's just take what you just said. They put it in there for clarification, not a restriction. If what they're saying is that it applies, in effect, to aiding and abetting, doesn't that clarify? And therefore, by implication, it does not apply to a co-conspirator enhancement. Because it's identical to the language in the first part. That Application Note 5 is identical to the language in Part A of 1B1.3a. So, yes, it duplicates that language in that particular guideline. It doesn't necessarily restrict the application of Section B, which is co-conspirator liability. There may have been an assumption that that was so well-established at that point. We don't – there's not more – I was hoping to find a little more guidance from the Commission, but I couldn't find it. And so we are left with what we have. And our position is, unless it clearly restricts the application of something just as universally applied as the co-conspirator liability exception, that it shouldn't be read that way. But more importantly in this case is we don't have to reach that issue because the conduct here of this defendant clearly aided and abetted the high-speed chase that ensued. Well, but it has to have aided and abetted and been responsible for the reckless endangerment. Yes, for the high-speed chase and the reckless manner in which that car was driven. How was he responsible for that? First of all, he planned the robbery. He planned – and this is not in dispute. He planned the robbery. He planned the use of a getaway car, which included the use of a rental car, which shows a consciousness right from the get-go of avoiding – He didn't rent it, though. His co-conspirator. That's correct, Your Honor. But he also designated the getaway driver. He chose this man. But if someone gets in the car and goes 50 miles an hour, which is fast but perhaps not reckless endangerment, and somebody gets in the car and goes 80 miles an hour, how is he responsible for the latter and not the former? He's responsible because he put this plan in motion. He hires the getaway driver. But the getaway driver, by its very definition, is to get them away from the robbery scene. And it's to do so without getting caught. That's exactly why I asked you my scenario. If I give the guy the keys to my car, this is the combination of them all. And the person that engages in a high-speed chase after they rob the bank, I'm sitting at home. I am liable for that high-speed chase. That's what you're arguing. But those are the facts that the Ninth Circuit rejected in a case. And those are not our facts. We have him here. Is that Wilfong, Ninth Circuit? Yeah. No, it's not Wilfong. It is – I'm sorry. It's Franklin, Your Honor. Franklin. That was the bank insider. Helped plan it. New getaway cars are being used. He wasn't there. They said that's insufficient. We are not – we are not faced with those facts. Here, not only does he get in the car, he rides in that car for three miles. What's he supposed to do? He's armed. The driver is not. If he disagrees with this course of conduct, he could have stopped that car prior to this time. He could have put the gun into the driver's head and just – Then he's talking about all reasonably foreseeable acts and omissions. Then you're talking about all reasonably foreseeable acts and omissions. And that standard is unless otherwise provided. And we have Application Note 5. Well, yes, Your Honor. I've moved on to say that it just doesn't matter in this case because the facts here are adequate to support a finding under an aiding and abetting standard of liability. Are you seriously arguing that he could have taken his gun and should have pointed it at the driver's head and said, stop this effing car now? This is exactly what the court found in Conley. That's what the prosecution is saying this defendant should have done? I'm saying – no. I am saying there is absolutely – it's illogical to assume that somebody who sets this whole thing in motion – No, you're saying that he could have stopped the high-speed chase. And I asked you a few minutes ago – He could have. He could have gotten out of the car before the police started to chase them. He could have told the driver to pull over at a much earlier part in the flight and get out of that car. I suggest that the reason that he got out of the car then was he realized they weren't going to outrun the police. And then what does he do? He gets out of the car. He takes off on foot. The police have to chase him some more. This is one continuous course of conduct to avoid apprehension. No, we also don't know whether the reckless endangerment happened after or before. It happened during. It happened – no, there was no argument, and it's conceded on appeal, that he drove recklessly before they got out of the car, as soon as the police spotted them. Right. But isn't that the argument you make back to the sentencing judge on resentencing? Well, our position, Your Honor, is that the facts here are adequate to allow this court to sustain that finding, even though the judge didn't apply an aiding and abetting standard. And because the facts here are sufficient, that's exactly what the court did in Conley. It did not remand. Of course, if Your Honors disagree that the judge didn't consider it under this express standard, and you would like him to, then remand would be appropriate. Well, why shouldn't we adopt a standard? It's in one of the cases, and I forget which one, maybe in Song where the court on appeals said that if you're going to use this as enhancement, you have to specifically on the record state the defendant's conduct that led to the recklessly endangering of others. Yes, they did, Your Honor, and they did remand. But our court, our practice here has been – I mean, other courts have taken a contrary view, which is where the record is adequate to sustain it. Why shouldn't we do that? Why shouldn't we just say put it on the record? If you're going to use this enhancement, put down what the defendant did to further or to cause the reckless endangering or to support it. Because the facts are of record, and the district court, although it did not apply an aiding and abetting analysis, he expressly endorsed each one of those facts that I've just mentioned at various points in the opinion. When he was talking about – not about the enhancement itself, but when he was talking about the obstruction enhancement, he noted that they left the scene at a high speed – first, he left the scene quickly to begin with before they started the offense. How would they normally leave the scene? On all fours? Who's in front of the bank? No, Your Honor, I would tell you there are – It says don't walk. Let's stop here and wait until it says walk. There are quite a few cases where the defendants use other methods to leave a bank, and a getaway car signals not only an intent that they will take whatever action they need to avoid the police, but it also – it's a job description for a getaway driver to be willing to do just that. So you're saying this enhancement is just commonplace. Rob a bank, getaway car, sitting in the car, you've got the enhancement. Not unless there's reckless endangerment. And that only happens if the police are lucky enough to spot this car. That does not happen all the time. Thank goodness. Whether it's a high-speed chase, though, you're saying, it's basically a strict liability. If you're in the car as a passenger during a high-speed chase, you get recklessly endangered. No, you'd still have to meet – you'd have to be somebody who participated in the robbery, was aware at least of the – was aware that a getaway car was part of the plan. You would look out. And it's not strict liability. If you're a lookout and you are aware that – and you know that a getaway car is part of the plan, you get in that car, the police are there. Yes, I believe that in that circumstance it should apply. And it would be totally unfair to hold, for example, the getaway driver who's outside in a car, responsible for the actions of his cohorts in the bank. Let's say the application note, they assault the teller, the teller's injured. He's held responsible. Yet the person who's in the bank, an assaulted teller, can get in the getaway car, drive away. Yeah, but he's not the driver. It doesn't – it doesn't matter. He's encouraging it by being part of this scheme. He is affirmatively participating in and bringing it about as something he wishes to happen, which is the standard application. You're saying that the person in the car remains outside, but the guy who goes inside assaults someone. The guy who's outside is hit with an enhancement. That's correct, Your Honor. And that's exactly the scenario presented in 1B1.3 in the application notes. And they say that is – that that person, the getaway driver, would be held responsible under the reasonable foreseeability co-conspirator liability test. That same standard. It is nonsensical to say that the person who – just because they're not driving, but they know that a getaway car is an integral part of the plan and – But that does render application note 5 a nullity. It really does. Well, I think it renders it more there for emphasis in the rare – and I will say it's a much less frequent situation, but maybe courts would not think to apply it when, let's say, bank robber fleeing from the scene of a bank robbery. Police are in pursuit. He sees his friend or his cousin or his relative, you know, in a car that's a faster car, and he somehow or other prevails upon this person to get in his car and drive away. He's not a co-conspirator. The court – I think they're just emphasizing – But that's not reasonably foreseeable either. Well, that's exactly right. That person, that's an aiding and abetting, and they're perhaps just emphasizing to the courts, you have to look beyond co-conspirator liability in this situation, particularly remember the same application note was added to 3C1.1. In the obstruction context, it's not usually the co-conspirator who helps you obstruct. It's usually your friends and relatives who are on the outside, and they're helping you do that. And I think it's there for a point of emphasis, not as a nullity. And if it were different language, we'd be having a different discussion. If it didn't track the language of Section A. I see my time is up, unless Your Honors have any further questions. Thank you. Thank you. Do you know Ms. Reich, by any chance, the attorney who argued first? What, what? Do you know Ms. Reich, the attorney who argued first, the student who argued first case? No, I didn't. No, the two of you, I mean, it's amazing. Did I speak too quickly again? It wasn't too quickly. I mean, it was very, very fast. But I understood every word. Not a problem. I wanted to get it all in. You did. Ms. Unger, you had some time reserved. Let me ask you at the outset about, you know, the government cites some cases that, about aiding and abetting in the, with respect to the use of a firearm during a robbery. In those cases, all the accomplice needs to do is understand what is happening and continue on. How is that any different from this? I mean, if this goes back, isn't the government going to make that argument and isn't that argument have a pretty darn good chance, or at least a pretty decent chance of succeeding? Well, those cases have a bit of a different color to them only because you're talking about being in the course of an armed robbery. I think there's a much greater likelihood that you know or are aware when you're planning the robbery that that's going to happen and that you intend that that's the way the robbery is going to be carried out. That's Ms. McKeon's argument as to this robbery. Can you say that again? That's her argument as to this robbery because your client got, I don't think the rental car is a big deal. He had to get the car from some place. It's either going to be a runner car or a stolen car. He's not going to use his own car, so that's all that relevant. But her argument is, look, he plans it. He's the one who comes up with this idea to get away by a getaway car, so he's basically in the same situation that you're arguing, isn't he? Well, and I think Your Honor's comment earlier really made the point. The way the government is arguing this is essentially a foreseeability test, and the test is aiding and abetting. And what the government's argument does is it creates a car enhancement rather than specifically intending and facilitating a high-speed chase. The aiding and abetting is not the aiding and abetting of the crime. It's the aiding and abetting of the reckless endangerment. Exactly. I mean, the seriousness of an armed robbery, it was certainly taken into account when the base offense level under Chapter 2 was thought out. And this is a separate conduct. I certainly don't think we can assume that every use of a car is going to end in a high-speed chase. I think if the police are not following me, I'm probably going to drive quickly but try to avoid attention. I mean, putting that aside, the reality is he was a willing passenger, but there's no evidence that he intended for Mr. Whitehurst to drive that way or encouraged or facilitated it any way. And that's the standard that the guidelines lay out. If I may address Conley quickly, if Your Honors would indulge me. I think Conley is the reason why the case should not be remanded. The case was clearly decided based on the planning. And what this Court needs to decide is whether planning an armed robbery and the use of a getaway car is sufficient. None of the other cases support that position. I would seek to limit Conley on the basis that the defendant did in fact say, we were trying to outrun the authorities. But the facts are as they stand, and at this point it's for this Court to decide whether that would be sufficient as a matter of law, and I submit that it doesn't have the aiding and abetting elements. Okay. Well, there was an act of procurement of the behavior. Exactly. Okay. Thank you. I'll take both matters under – I'll take the matter under my own – but again, speaking only for myself, I don't – I'm not at all sure you're right, but boy, that was one heck of an oral argument.  You did a wonderful job, and Ms. Unger did also. Thank you, Your Honor. But you really – again, I'm not at all sure I agree with you. Frankly, I'm pretty sure I don't agree with you. But I only won both. But that was an excellent argument nevertheless. Thank you. You might ask yourself, what the heck good was it? You did a really good job. Ms. Unger, as I said, also did. Both sides. Thank you.